# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

**JASON DEON PALTON,**
**ADC #095164**                                                                                    **PLAINTIFF**

**V.**                           **CASE NO. 5:19-CV-51-DPM-BD**

**JAMES GIBSON,** *et al*.                                                                   **DEFENDANTS**

## RECOMMENDED DISPOSITION

**I.    Procedure for Filing Objections**

This Recommendation has been sent to Chief Judge D.P. Marshall Jr. Any party may file written objections if they disagree with the findings or conclusions set out in the Recommendation. Objections should be specific and should include the factual or legal basis for the objection. To be considered, objections must be received in the office of the Court Clerk within 14 days.

If no objections are filed, Judge Marshall can adopt this Recommendation without independently reviewing the record. By not objecting, parties may waive the right to appeal questions of fact.

**II.   Background**

Plaintiff Jason Deon Palton, an inmate in the Arkansas Division of Correction (ADC), filed this case without the help of a lawyer under 42 U.S.C. § 1983. (Docket entry #2) Mr. Palton claims that Defendants Gibson, Shipman, Washington, and Davis (Defendants) retaliated against him by assigning him to restrictive housing at the Varner Super Max Unit and that Defendant Davis retaliated against him by writing false

disciplinary charges. (#2, #6) Defendants have moved for summary judgment. (#39) Mr. Palton has not responded to the Defendants' motion, and the response deadline has passed.

### III.    Standard

In a summary judgment, the Court rules in favor of a party before trial. A moving party is entitled to summary judgment only if the evidence shows that there is no genuine dispute as to any fact that is important to the outcome of the case. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322B23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246 (1986). If there is a dispute about important facts, the case cannot be decided on summary judgment.

Because Mr. Palton did not respond to the Defendants' Motion for Summary Judgment or to their Statement of Undisputed Facts, the Court will assume that the Defendants' version of the facts is accurate. See Local District Court Rule 56.1.

### IV.    Facts

On July 26, 2006, Mr. Palton filed a lawsuit against several ADC officials alleging, among other things, that Officer Antonio Remley had engaged in sexual relations with him while he was incarcerated at the Varner Super Max Unit. *Palton v. Jackson*, E.D. Ark. Case No. 5:06-cv-198-SWW; see also #39-1, p.16.

On December 13, 2017, Mr. Palton was transferred to the Cummins Unit. (#39-5, p.9) He requested protective custody at the Cummins Unit because he is homosexual, and

he believed that he would "be preyed upon." (#39-1, pp.21-22) ADC officials did not grant his request; instead, he was assigned to restrictive housing at the Cummins Unit on January 4, 2018, where he shared a cell with another inmate. (#39-1, pp.21-22; #39-5, p.9) At different times, he shared a cell with inmates Phillips and Gray. (#39-1, pp.21-24)

On March 6, 2018, a mental health advisor notified Lieutenant Tasha Griffin (not a Defendant) that Mr. Palton had filed a sick call request indicating a possible violation of Prison Rape Elimination Act (PREA); that is, an indication that inmates Phillips and Gray had raped Mr. Palton. (#39-6, p.14) Officials opened a PREA investigation, and on March 19, 2018, referred the matter to the ADC's Internal Affairs Division. (#39-6, pp.1-2, 5, 12)

Margaret Rogers from Internal Affairs was assigned to investigate. (#39-6, pp.1-2, 5, 12) On March 29, 2018, Mr. Palton admitted to Ms. Rogers that he had engaged in consensual oral sex and sexual intercourse with inmate Phillips. (#39-6, pp.1-2, 5) He also admitted to Ms. Rogers that he had engaged in oral sex with inmate Gray. He further stated that inmate Gray had not forced him to engage in sexual conduct. (#39-6, pp.1-2, 5) At the conclusion of her investigation, Ms. Rogers recommended that Mr. Palton be housed in a single-person cell for his protection and for the protection of others. (#39-6, p.4)

Lieutenant Thomas (not a Defendant) reviewed Ms. Rogers's internal affairs report and concluded that Mr. Palton, along with inmates Phillips and Gray, had violated

3

the ADC rule prohibiting consensual sex between inmates. (#39-6, p.9) She charged all three inmates with engaging in sexual activity with another consenting individual; engaging in non-abusive sexual activity with another person; failing to obey orders; refusing a direct verbal order; and lying to a staff member, whether by omission or by providing false information. (#39-6, p.10)

On April 13, 2018, Mr. Palton attended a disciplinary hearing on the charges. (#39-3, pp.1-2) Hearing officer Justine Minor (not a Defendant) found Mr. Palton guilty of engaging in sexual activity; engaging in non-abusive sexual activity with another person; and lying to a staff member. As punishment, Mr. Palton received a 30-day assignment in punitive isolation, class reduction, and a 60-day restriction from commissary, phone, and visitation privileges. (#39-3, pp.1-2)

Director Wendy Kelley (not a Defendant) upheld the guilty verdicts for engaging in sexual activity with a consenting person and lying to a staff member, but she found Mr. Palton not guilty of non-abusive sexual activity with another because that charge overlapped the charge of engaging in sexual activity with a consenting person. (#39-6, p.13)

On April 23, 2018, Mr. Palton was transferred from the Cummins Unit back to the Varner Super Max Unit. (#39-5, p.7) On April 26, 2018, he was assigned to restrictive housing at Varner Super Max. (#39-5, p.7) According to the ADC's policy on restrictive housing, the classification committee may place an inmate in restrictive housing if his or

4

her presence in the general population would pose a threat to the safe and secure operations of the facility. (#39-2, p.1)

On May 2, 2018, the classification review committee reviewed Mr. Palton's restrictive housing assignment and a plan for his release to general population. (#39-4, p.1) Under the plan, before release from restrictive housing, Mr. Palton would have to reach class II status or higher; complete the sanctions imposed by the disciplinary court; remain disciplinary-free for one year; and complete a step-down program. (#39-4, p.1) The release plan included this notation: "Engaging in sexual activity at Cummins Unit"—presumably to explain why Mr. Palton was initially assigned to restrictive housing at Varner Super Max. (#39-4, p.1)

On June 12, 2018, Defendant Gibson reviewed Mr. Palton's restrictive-housing status to consider Mr. Palton's request to be assigned to the step-down program.[1] (#39-4, p.3) Defendant Gibson advised Mr. Palton that he would have to reach class IC status before he would be eligible for the step-down program. (#39-4, p.3)

On July 9, 2018, Mr. Palton filed a second lawsuit against several ADC officials, raising claims related to the March 2018 sexual activity at the Cummins Unit. *Palton v. Straughn*, E.D. Ark. Case No. 5:18-cv-179-BSM; see also #39-1, p.64.

---

[1] The step-down program prepares an inmate for transition from restrictive housing to general population or the community. (#39-2, p.2)

On July 11, 2018, the classification committee promoted Mr. Palton to class III (#39-4, p.4; #39-5, p.6) On August 15, 2018, he was promoted to a class II. (#39-4, p.5; #39-5, p.6) But, a week later, Sergeant Mary Lloyd (not a Defendant) issued Mr. Palton a disciplinary for using abusive language and refusing a direct order. (#39-3, p.4) On the same day, mental health advisor Tiffany Williams (not a Defendant) also issued Mr. Palton a major disciplinary for using abusive language and profanity towards her. (#39-3, pp.7-9)

Mr. Palton attended a hearing on those disciplinaries on August 28, 2019. He was found guilty of failing to obey an order; insolence to staff member; and creating an unnecessary noise. As a result of these convictions, Mr. Palton received a 45-day restriction on commissary, visits, and phone privileges; and he was reduced to class IV status. (#39-3, pp.4-5, 7-9)

On September 19, 2018, Mr. Palton attended a classification hearing as a class IV inmate with all the Defendants in attendance. (#39-1, p.40; #39-4, p.6) The committee voted unanimously for Mr. Palton to remain in restrictive housing. (#39-4, p.6) Later that day, Defendant Davis issued Mr. Palton a major disciplinary charge. (#39-3, pp.10-12) In that disciplinary, she wrote:

> On September 19, 2018, at approximately 10:55AM, I Cpl. R. Davis observed Inmate Jason Palton #095164 (who's housed in Cellblock 2 Cell #206 Zone 2) addressed [sic] during his Warden Review with Warden Gibson and the committee that he was tired of being in the Varner Super Max and wanted to go to population. Warden Gibson advised that he's not able to be in Varner General Population due to his prior information from eOMIS. Then Inmate Palton yelled,

> "Is y'all gone transfer me then because I'm tired of being locked down back here!" Warden Gibson then stated, "You will be transferred when bed space is available at a receiving unit." Inmate Palton then became confrontational and irritated and stated, "I already had you in court once. I don't mind doing it again." Inmate Palton #095164 was then given a direct order to go back to his cell with his escort team but Inmate Palton stood and yelled, "I'm going to have your trifling ass in court. You should know I don't mind doing lawsuits on your ass!" Inmate Palton was then escorted back to his cell by his escort team. Due to Inmate Palton #095164 going against ADC rule and regulations, I Cpl. R. Davis charge him with rule violations 02-17, 02-20, 11-1, 12-3, and 12-4. Pending DCR.

(#39-3, p.10) Defendant Davis charged Mr. Palton with five code violations: creating unnecessary noise; unauthorized contacts with the public; insolence to a staff member; failure to obey order of staff; and refusing a direct verbal order. (#39-3, p.10) Mr. Palton asserts that Defendant Davis made up these disciplinary charges. (#39-1, p.41)

On September 28, 2018, Mr. Palton attended a disciplinary hearing on the charges and denied using profanity. (#39-3, pp.11-12) Hearing officer, Justine Minor, found him guilty of creating unnecessary noise and insolence to a staff member. (#39-3, pp.11-12) Ms. Minor found him not guilty of unauthorized contacts with the public; failure to obey order to staff; and refusing a direct order. (#39-3, pp.11-12) On appeal, Director Kelley affirmed the disciplinary convictions for creating unnecessary noise and insolence to a staff member. (#39-1, pp.45-46; #39-3, p.11-12) However, she reversed the other disciplinary convictions. (#39-1, pp.45-46; #39-3, p.11-12)

On November 28, 2018, Mr. Palton was promoted from class IV status to class III status. (#39-5, p.6) On December 27, 2018, he was promoted to class IC status. (#39-6, p.4) On January 31, 2019, Mr. Palton filed this lawsuit claiming that Defendants

7

retaliated against him for exercising his federally protected right to file grievances and lawsuits. (#2)

## V. Official Capacity Claims

A civil litigant cannot recover money damages from state actors sued in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). Accordingly, any claim for money damages against the Defendants in their official capacities must be dismissed.

## VI. Individual Capacity Claims

To succeed on a retaliation claim, Mr. Palton must establish that he engaged in constitutionally protected activity; that defendants took adverse action against him that would chill a person of ordinary firmness from engaging in that activity; and that retaliation was the actual motivating factor for the adverse action. *Lewis v. Jacks,* 486 F.3d 1025, 1029 (8th Cir. 2007); *Revels v. Vincenz,* 382 F.3d 870, 876 (8th Cir. 2004); *Sisneros v. Nix*, 95 F.3d 749,752 (8th Cir. 1996).

Mr. Palton did engage in protected activity, *i.e.*, filing grievances and lawsuits. And, Defendants at the Varner Super Max Unit took adverse actions, *i.e.*, writing disciplinary charges, assigning him to restrictive housing, and suspending privileges. Mr. Palton's retaliation claims fail, however, because he cannot show that retaliation was the motivation for the punishment that was imposed.

Under settled law, retaliation must have been the "actual motivating factor" for a defendant's adverse action toward an inmate. In other words, the inmate must show that the defendants would not have taken adverse actions against him, "but for a retaliatory motive." *Lewis,* 486 F.3d at 1029; *Haynes v. Stephenson*, 588 F.3d 1152, 1156 (8th Cir. 2009). Mr. Palton cannot prevail if the Defendants had legitimate reasons for the actions they took against him, even if there might also have been a retaliatory motive. *Id.; Ponchik v. Bogan*, 929 F.3d 419, 420 (8th Cir. 1991) (rejecting a retaliation claim where there were legitimate reasons for the inmate's transfer, even though retaliation was also a factor).

A. Restrictive Housing Assignment

According to Mr. Palton, he was placed in restrictive housing at the Varner Super Max Unit in retaliation for filing two previous lawsuits against prison staff, for reporting that inmates sexually assaulted him, and for filing grievances. (#2, #6) Based on the undisputed facts in the record, there were legitimate reasons for Mr. Palton's placement in restrictive housing.

Mr. Palton was initially placed in restrictive housing at the Cummins Unit on January 4, 2018. None of the Defendants in this case were involved in that decision. After Ms. Rogers at the internal affairs office investigated incidents of sexual contact between Mr. Palton and his cellmates, she recommended that Mr. Palton be assigned to a single-man cell—both for his protection and for the safety of others. Following Ms. Rogers's

report, correction officers at Cummins issued disciplinaries to Mr. Palton (and his cellmates) and found him guilty of engaging in prohibited sexual conduct. There is no issue about the fairness of the hearing at Cummins.

Mr. Palton claims that Defendants began retaliating against him as soon as he arrived at the Varner Super Max Unit on April 23, 2018, by assigning him to restrictive housing. The decision to place Mr. Palton in restrictive housing upon his arrival at the Varner Super Max Unit, however, flowed from his disciplinary convictions at the Cummins Unit and his history of engaging in prohibited sexual activity. The classification committee had sufficient reason to assign Mr. Palton to restrictive housing when he arrived at the Super Max.

Super Max officials developed a plan for Mr. Palton's release from restrictive housing, but his release to general population was repeatedly delayed by his failure to meet the goals set out in the plan. When Defendant Gibson reviewed Mr. Palton's housing status, after Mr. Palton had expressed a desire to be placed in the step-down program, Defendant Gibson reminded him that he first had to obtain IC class status.

Mr. Palton was promoted to class III, and then to class II status, but his class was reduced after he received disciplinaries from Sergeant Lloyd and Ms. Williams, neither of whom are Defendants. He was found guilty of both charges, which resulted in his class reduction. Mr. Palton received yet another disciplinary from Defendant Davis. He was convicted of that charge as well and, as a result, remained at class IV. Mr. Palton was

10

promoted to class III, and on December 27, 2018, he finally achieved class IC status. He filed this lawsuit on January 31, 2019.

Based on these facts, Mr. Palton cannot prove that his assignment to restrictive housing was the result of Defendants' retaliatory motives. To the contrary, the undisputed evidence demonstrates that there was a plan for Mr. Palton's release from restrictive housing; Defendants regularly reviewed his restrictive-housing placement; and his release to general population was delayed due to his own misbehavior. Some of Mr. Palton's disciplinary charges were issued by Defendants in this case; other were not.

B.     Disciplinary by Davis

Two of the disciplinary charges that Defendant Davis issued (creating unnecessary noise and insolence to staff member) cannot form the basis of a retaliation claim. A disciplinary conviction that is supported by some evidence "essentially checkmates" a retaliation claim. *Hartsfield,* 511 F.3d 826, 831 (8th Cir. 2008); *Goff v. Burton,* 7 F.3d 734, 738 (8th Cir. 1993) "[A] report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as some evidence upon which to base a prison disciplinary violation, if the violation is found by an impartial decision maker." *Hartsfield v. Nichols,* 511 F.3d at 831; *Henderson v. Baird,* 29 F.3d 464, 469 (8th Cir. 1994). This rule holds true even if the report is written by the officer who is alleged to have engaged in the retaliatory conduct. *Hartsfield,* 511 F.3d at 831. Mr.

11

Palton was convicted by an impartial hearing officer; thus, he has no retaliation claim based on the unnecessary noise and insolence charges that Defendant Davis issued.

Defendant Davis issued other charges that a hearing officer did not sustain. Defendants argue that "it is of no consequence that Palton's disciplinary was modified." The fact that Mr. Palton was not convicted on three charges that Defendant Davis issued leaves a question as to whether Defendant Davis <u>charged</u> Mr. Palton with authorized contact with the public, failure to obey order of staff, and refusing a direct verbal order in retaliation for exercising constitutionally protected rights.

A review of the record shows, however, that the acquitted charges cannot support Mr. Palton's retaliation claims against Defendant Davis. Even though Mr. Palton was not convicted on three charges, there is no evidence to indicate that Defendant Davis wrote those disciplinaries in retaliation for Mr. Palton's filing other lawsuits against prison staff, reporting sexual assaults, or filing grievances. Defendant Davis was not involved in either of Mr. Palton's two previous lawsuits. In fact, Mr. Palton admitted in his deposition that he did not believe Defendant Davis retaliated against him for bringing the 2006 lawsuit. (#39-1, p.33) Mr. Palton's second lawsuit arose from events at the Cummins Unit, and Defendant Davis has no perceivable connection to the claims or defendants in that lawsuit. In sum, there is simply no evidence to suggest that Defendant Davis retaliated against Mr. Palton—or that he had any reason to retaliate against him. See *Cooper v. Schriro*, 189 F.3d 781,784 (8th Cir. 1999); *Atkinson v. Bohn*, 91 F.3d

1127, 1129 (8th Cir. 1996) (mere speculative or conclusory allegations are insufficient to establish a retaliation claim.).

## VII. Conclusion

Defendants' motion for summary judgment (#39) should be GRANTED, and Mr. Palton's claims should be DISMISSED, with prejudice.

DATED this 31st day of January, 2020.

_____
UNITED STATES MAGISTRATE JUDGE